CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Samuel Love**, | **Case No**. |
| Plaintiff, | |
| v. | **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |
| **Tirupati Investor Enterprises, Inc**., a California Corporation; and Does 1-10, | |
| Defendants. | |

Plaintiff Samuel Love complains of Defendant Tirupati Investor Enterprises, Inc., a California Corporation; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is substantially limited in his ability to walk. He is a paraplegic who uses a wheelchair for mobility.

2. Defendant Tirupati Investor Enterprises, Inc., owned the real property located at or about 10625 Magnolia Avenue, Riverside, California, in March

1

2018.

3.   Defendant Tirupati Investor Enterprises, Inc., owns the real property located at or about 10625 Magnolia Avenue, Riverside, California, in March 2018.

4.   Defendant Tirupati Investor Enterprises, Inc., owned the Sands Motel located at or about 10625 Magnolia Avenue, Riverside, California, in March 2018.

5.   Defendant Tirupati Investor Enterprises, Inc., owns the Sands Motel ("Motel") located at or about 10625 Magnolia Avenue, Riverside, California, currently.

6.   Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7.   The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8.   Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights

Complaint

Act, which act expressly incorporates the Americans with Disabilities Act.

9.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to the Motel in March 2018.

11. The Motel is a facility open to the public, a place of public accommodation, and a business establishment.

12. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Motel.

13. Unfortunately, there were no van-accessible parking stalls serving the Motel on the day of plaintiff's visit.

14. Instead, the only parking stalls reserved for persons with disabilities measured 96 inches in width while the access aisle measured 68 inches in width on the day of plaintiff's visit. These are not van accessible.

15. Additionally, the parking stalls and access aisle were not level with each other because there was built up curb ramp running into the access aisle.

16. Also, the parking spaces marked and reserved for persons with disabilities had slopes greater than 2.1%.

17. On information and belief, Plaintiff alleges that the defendants once had a compliant van accessible parking space marked and reserved for persons with disabilities. Unfortunately, the van parking space was allowed to fade or get paved over.

18. There are currently no compliant, van accessible parking space at the Motel.

19. Currently, the parking stalls and access aisle are not level with each other because there is a built up curb ramp running into the access aisle.

Complaint

20. Currently, the parking stalls and access aisle are not level with each other and there are inaccessible slopes in both the access aisle and parking stalls.

21. The Defendants had no policy or plan in place to make sure that the parking spaces reserved for persons with disabilities remained useable prior to plaintiff's visit.

22. The Defendants have no policy or plan in place to make sure that the parking spaces reserved for persons with disabilities remain useable, currently.

23. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

24. Plaintiff personally encountered this barrier.

25. This inaccessible parking lot denied the plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment.

26. Transaction counters are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Motel.

27. Meanwhile, and even though plaintiff did not personally confront the barrier, the transaction counter at the Motel is more than 36 inches in height. In fact, the transaction counter is 42 inches high.

28. There is no lowered, 36 inch portion of the transaction counter at the Motel for use by persons in wheelchairs.

29. Plaintiff plans to return and patronize the Motel but will be deterred from visiting until the defendants remove the barriers.

30. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

31. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the

4

Complaint

Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

32. For example, there are numerous paint/stripe companies that will stripe a van accessible parking stall and access aisle and install proper signage on short notice and for a modest price, sometimes as low as $300, in full compliance with federal and state access standards.

33. For example, there are numerous paint/stripe companies that will come and stripe a level parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

34. Another common barrier removal project is modifying transaction counters to make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

35. Plaintiff is and has been deterred from returning and patronizing the Motel because of his knowledge of the barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize the Motel as a customer once the barriers are removed.

36. Given obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff

Complaint

1  encounters one barrier at a site, he can sue to have all barriers that relate to her
2  disability removed regardless of whether he personally encountered them).

3     37. Additionally, on information and belief, the plaintiff alleges that the
4  failure to remove these barriers was intentional because: (1) these particular
5  barriers are intuitive and obvious; (2) the defendants exercised control and
6  dominion over the conditions at this location and, therefore, the lack of
7  accessible facilities was not an "accident" because, had the defendants
8  intended any other configuration, they had the means and ability to make the
9  change.

10

11  **I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS**
12  **WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all
13  Defendants.) (42  U.S.C. section 12101, et seq.)

14     38. Plaintiff re-pleads and incorporates by reference, as if fully set forth
15  again herein, the allegations contained in all prior paragraphs of this
16  complaint.

17     39. Under the ADA, it is an act of discrimination to fail to ensure that the
18  privileges, advantages, accommodations, facilities, goods and services of any
19  place of public accommodation is offered on a full and equal basis by anyone
20  who owns, leases, or operates a place of public accommodation. See 42 U.S.C.
21  § 12182(a). Discrimination is defined, inter alia, as follows:

22        a. A failure to make reasonable modifications in policies, practices,
23           or procedures, when such modifications are necessary to afford
24           goods,  services,  facilities,  privileges,  advantages,  or
25           accommodations to individuals with disabilities, unless the
26           accommodation would work a fundamental alteration of those
27           services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

28        b. A failure to remove architectural barriers where such removal is

6

Complaint

readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

40. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those accessible parking spaces but not less than one must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

41. Here, the failure to provide a van accessible parking is a violation of the law.

42. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Here, the access aisle and parking space is not level. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

7

Complaint

43. Here the failure to provide level parking is a violation of the law.

44. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

45. Here, no such accessible transaction counter has been provided in violation of the ADA.

46. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

47. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

48. Given its location and options, plaintiff will continue to desire to patronize the Motel but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT (On behalf of plaintiff and against all defendants) (Cal Civ § 51-53)**

49. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia,

Complaint

that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California.  Cal. Civ. Code §51(b).

50. The Unruh Act also provides that a violation of the ADA, or of California state accessibility regulations, is a violation of the Unruh Act.  Cal. Civ. Code, § 51(f); Arnold v. United Artists Theatre Circuit, Inc., 866 F.Supp. 433, 439 (N.D.Cal.1994).

51. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

52. Defendants' acts and omissions, as herein alleged, have also violated the Unruh Act by denying, or aiding or inciting the denial of, Plaintiff's right to equal access arising from the provisions of the ADA (see Plaintiff's First Cause of Action).

53. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

Complaint

    2. Damages under the Unruh Civil Rights Act, which provides for actual
damages and a statutory minimum of $4,000.

    3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant
to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.


Dated: April 20, 2018             CENTER FOR DISABILITY ACCESS


                       By: _____

                              Chris Carson, Esq.
                              Attorney for plaintiff

10

Complaint