CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Isabel Masanque, Esq., SBN 292673
Chris Carson, Esq., SBN 280048
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Samuel Love**,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>**Tirupati Investor Enterprises, Inc**., a California Corporation; and Does 1-10,<br><br>　　　　Defendant. | **Plaintiff's Reply Brief in Support of Motion for Summary Judgment**<br><br>　Date:　　May 31, 2019<br>　Time:　　9:30 a.m.<br>　Ctrm:　　8C<br><br>Hon. Judge Dolly M. Gee |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendant opposes Plaintiff's motion for summary judgment on the grounds that Plaintiff lacks standing and that the parking and transaction counter violations have now been remediated. However, Defendant's arguments regarding standing demonstrate a misunderstanding of the standing analysis under *Chapman*. Because Mr. Love personally encountered the access standards violations during his visit he has sufficiently proven an injury in fact; and because Mr. Love is and was deterred from the Motel due to these violations, he has also proven threat of imminent injury. While the defense claims these violations have been remediated, its motion fails to provide a single measurement in support. Therefore, the defense fails to meet its burden to establish mootness. There is no defense in this case. The court should grant Plaintiff's motion.

## II.  PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE

The defense claims that Plaintiff has failed to meet his initial burden of production. As outlined in Plaintiff's moving papers, to succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). "The third element—whether plaintiffs were denied public accommodations on the basis of disability— is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing*, *Chapman*, 631 F.3d at 945.

Each of the above elements are met in the present case. First, Plaintiff has demonstrated that Mr. Love is a person with a disability.[1] Second, Defendant owns and operates the Motel, a place of lodging, and therefore a place of public accommodation.[2] Third, Mr. Love has demonstrated that on the date of his visit, he encountered the parking violations at the Motel.[3] The subsequent investigation by Mr. Louis just one month later confirms the conditions that Mr. Love encountered, and the measurements he obtained from that investigation prove that the parking did not meet applicable ADA standards.[4] The defense "denies" Mr. Love's disability and denies that there was no accessible parking on the date of Mr. Love's visit. However, other than these conclusory denials, the defense does not provide any facts or evidence in support. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers.[5] Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id*. Thus, Defendant has failed to sufficiently raise a genuine issue of material fact.

The defense further claims that the plaintiff has failed to demonstrate that remediation is readily achievable. In *Colorado Cross Disability Coalition v. Hermanson Family Ltd. P'ship I*, 264 F.3d 999, 1005-1006 (10th Cir.2001), the court adopted the following approach: wherein Plaintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable, i.e., can be accomplished easily and without much difficulty or expense. If Plaintiff satisfies this burden, Defendant then has the opportunity to rebut that

---

[1] See DKT No. 23-2, Plaintiff's SUF, SUF #1.
[2] See DKT No. 23-2, Plaintiff's SUF, SUF #3,4; see also DKT No. 23-1, Plaintiff's Motion, p. 9:17-20.
[3] See DKT No. 23-2, Plaintiff's SUF, SUF #6-8.
[4] See DKT No. 23-2, Plaintiff's SUF, SUF #12-15.
[5] *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.,* 690 F.2d 1235, 1238 (9th Cir. 1982).

2

1   showing. Defendant bears the ultimate burden of persuasion regarding its
2   affirmative defense that a suggested method of barrier removal is not
3   readily achievable.[6]

4         Here, Plaintiff has demonstrated that creating accessible parking
5   spaces is readily achievable because it is the type of action presumed to
6   be readily achievable under the law. 28 C.F.R. § 36.304(b)(18). The
7   defense has failed to rebut this showing. Instead, the defense merely
8   proffers a declaration from Ms. Tailor, the owner of the motel, stating that
9   "based on [her] experience in operating the Motel that it would cost
10  approximately over $50,000" to bring the van accessible parking space
11  into compliance.[7] However, Ms. Tailor is not an expert in ADA or
12  construction, therefore her testimony and experience as a Motel owner is
13  insufficient to prove the cost of remediating the accessible parking space.

14        Moreover, the Defendant has already made alterations to the
15  accessible parking space at the Motel. As outlined below, the defense fails
16  to provide measurements of the parking in order to establish mootness.
17  However, such efforts—although they fall short—prove that creating
18  accessible parking spaces is readily achievable. See *Wilson v. Pier 1*
19  *Imports (US), Inc.*, 439 F.Supp.2d 1054, 1069 (E.D. Cal. 2006) ("Given
20  that the barrier has already been cured, the court must find that it was
21  readily achievable, and thus that it violated the ADA and subsequently the
22  Unruh Act.").

23
24
25
26
27
28

---

[6] See also, *Doran v. Del Taco*, 2005 WL 3478136 (C.D. Cal. 2005) adopting the Colorado Cross Disability burden shifting analysis and reaffirming that "readily achievable" is an affirmative defense.
[7] DKT No. 28, Decl. of Tailor, ¶ 12.

2

## III. DEFENDANT HAS NOT MET ITS BURDEN OF ESTABLISHING MOOTNESS

The defense claims that "even if the alleged barriers once existed at the time of plaintiff's original visit…they do not continue to exist for purposes of injunctive relief."[8] However, "[t]he test for mootness…is a stringent one."[9] A claimed remedy "might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."[10] The party asserting mootness has "the heavy burden of persuading the Court that the challenged conduct cannot be reasonably expected to recur."[11]

Here, Defendant has failed to provide sufficient evidence that the parking at the Motel now complies with ADA standards. While the defense provides photos of the newly striped designated accessible parking space, it does not offer any measurements proving that the parking space and access aisle meet the width requirements to qualify as a van accessible parking space.[12] The defense has also not provided any measurements showing that the slope of the parking is now within the maximum permitted under the ADA. [13] Instead, the declaration of Ms.

---

[8] DKT No. 30, Defense Opposition, p. 7:15-18.

[9] *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203-04 (1968) (citation and internal punctuation omitted).

[10] *Friends of the Earth,* 528 U.S. at 167.

[11] *Id.*

[12] One in every eight accessible parking spaces, but not less than one, must be a "van" accessible parking space, *i.e.*, having an eight foot (96 inch wide) access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six of those accessible parking spaces, but not less than one, must be "van" accessible, i.e. having an eight foot access aisle, or alternatively, having a stall measuring 132 inches in width with a 60 inch adjacent access aisle. 2010 Standards § 502.2.

[13] Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards § 502.4. "Access aisles are required to be nearly level in all directions to provide a surface for

2

Tailor merely states that she "believe[s] tthat [sic] there is enough space in the van accessible area for a wheelchair bound individual" to exit and access the Motel and that she "believe[s] that the access aisle is not narrow…nor is the slope noticeable."[14] Similarly, with respect to the transaction counters, the defense claims that the new transaction counter is "significantly lower" than the regular transaction counter, again without providing a single measurement.[15] Because Ms. Tailor is not an expert, her mere belief that the access aisle and transaction counter are now compliant is far from sufficient to meet the stringent test for proving mootness.

## IV. PLAINTIFF HAS MET THE BROAD AND LIBERAL TEST FOR STANDING IN ADA CASES

Given the generous and broad standing requirement for ADA cases, Defendant's arguments against standing lack merit. Decades ago, the Supreme Court held that in civil rights cases—especially where private enforcement suits are the primary method of obtaining compliance—standing must be given a "generous construction" and defined "as broadly as is permitted by Article III of the Constitution."[16] The Ninth Circuit has expressly applied this holding to ADA cases: "The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act."[17] Whenever ADA standing challenges have come before the courts, this has been a guiding principle. "Article III standing should likewise be construed as

---

wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

[14] DKT No. 28, Decl. of Tailor, ¶ 10, 11.

[15] DKT No. 28, Decl. of Tailor, ¶ 15.

[16] *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 & 212 (1972).

[17] *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 -1040 (9th Cir. 2008).

2

broadly as possible."[18] "[T]he ADA, the Unruh Act, and the DPA require the court to *construe standing liberally* . . . The ADA, the Unruh Act, and the DPA have granted private citizens a *broad right* to enforce their mandates."[19]

With respect to ADA-architectural-barrier cases, the Ninth Circuit has grappled with standing issues on numerous occasions and laid down a healthy body of published case law. The most significant of Ninth Circuit rulings on the topic is *Chapman v. Pier 1 Imports*,[20] which was decided by an *en banc* panel. *Chapman* holds that an ADA plaintiff: (1) "must demonstrate that he has suffered an injury-in-fact," and (to obtain injunctive relief), (2) demonstrate a "real and immediate threat of repeated injury" in the future.[21] Plaintiff will discuss and apply each element to the facts of the present case.

### A.   Plaintiff suffered an injury in fact because he personally encountered inaccessible parking conditions at the Motel on March 5, 2018.

Under the ADA, the general rule is that persons with disabilities are entitled to "full and equal enjoyment" of facilities, privileges and accommodations offered by places of public accommodation.[22] A specific act of discrimination is the "failure to remove architectural barriers" that are readily achievable to remove.[23] The *Chapman* court held, therefore, a plaintiff's rights are violated under the ADA "when a disabled person

---

[18] *Wilson v. Pier 1 Imports (US), Inc.*, 413 F. Supp. 2d 1130, 1133 (E.D. Cal. 2006).
[19] *Natl. Fedn. of the Blind of California v. Uber Techs., Inc.*, 103 F. Supp. 3d 1073, 1084 (N.D. Cal. 2015) (emphasis added).
[20] *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011).
[21] *Chapman*, supra, 631 F.3d at 946.
[22] 42 U.S.C. § 12182(a).
[23] 42 U.S.C. § 12182(b)(2)(A)(iv).

2

encounters an accessibility barrier [that] interferes with the plaintiff's full and equal enjoyment of the facility."[24]

But what constitutes a barrier that interferes with full and equal enjoyment? *Chapman* answered this question definitively: "Because the ADAAG establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, *it will impair* the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA. That discrimination satisfies the 'injury-in-fact' element . . . ."[25] This is an *objective* test:

> A disabled person who encounters a "barrier," i.e., an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA. Indeed, by establishing a national standard for minimum levels of accessibility in all new facilities, the ADAAG removes the risk of vexatious litigation that a more subjective test would create. Those responsible for new construction are on notice that if they comply with the ADAAG's objectively measurable requirements, they will be free from suit by a person who has a particular disability related to that requirement.[26]

In the present case, Mr. Love went to the Sands Motel in March 2018 to check rates and stay the night.[27]  He found that the access aisles of the designated accessible parking spaces were too narrow and sloped for him to use.[28] As outlined in Plaintiff's motion, there is no question that this was an unlawful barrier. And there can be no question that this barrier "relates to" Mr. Love's disability. Mr. Love is a wheelchair user and the requirements for an accessible parking space affects wheelchair users who need an access aisle with the proper width and slope to safely exit their

---

[24] *Chapman*, supra, 631 F.3d at 947.
[25] *Chapman*, supra, 631 F.3d at 947 (emphasis added).
[26] *Chapman*, supra, 631 F.3d at 948, fn. 5 (internal cites and quotes omitted for readability).
[27] See DKT No. 23-2, Plaintiff's SUF, SUF #5.
[28] See DKT No. 23-2, Plaintiff's SUF, SUF #6-8.

2

vehicle.[29] For this reason, the defendant's argument that Mr. Love does not appear in any of the Motel's guest registration records are irrelevant and unconvincing. Because there was no compliant parking space on the date of his visit, Mr. Love was unable to safely park and had to leave the property.[30]

Thus, there can be no dispute that Mr. Love suffered an injury in fact during his visit in March 2018.

**B.    Mr. Love has standing to obtain injunctive relief because he is deterred from returning to Motel until the unlawful barriers are removed.**

The final question before the court in a standing inquiry is whether a plaintiff can establish that there is ongoing injury or a real likelihood of future injury.[31] It is axiomatic that if there is no ongoing or likely future injury, then a plaintiff has no standing for injunctive relief. *Chapman* firmly established that there are two ways to demonstrate such standing: "Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there."[32]

In the present case, Mr. Love has alleged such deterrence. Because he cannot safely park, he is deterred from further patronizing the property."[33]  This evidence is uncontroverted and more than sufficient to meet the threshold for standing, especially given that courts have held that

---

[29] See DKT No. 23-2, Plaintiff's SUF, SUF #9, 10.
[30] See DKT No. 23-2, Plaintiff's SUF, SUF #11.
[31] *Chapman*, supra, 631 F.3d at 946-47.
[32] *Chapman*, supra, 631 F.3d at 949.
[33] See DKT No. 23-2, Plaintiff's SUF, SUF #11.

2

1  standing should be construed generously, liberally and to the broadest
2  extent possible in these ADA cases.

3        Moreover, stating an intention to return to a store after the barriers
4  have been fixed is sufficient to establish standing: "When asked in his
5  deposition whether he had any plans to return to the store, Doran
6  answered, 'Yes, once it's fixed.' This deposition testimony demonstrates
7  both *Doran*'s continued deterrence from patronizing the store and his
8  intention to return in the future once the barriers to his full and equal
9  enjoyment of the goods and services offered there have been removed."[34]
10 The *Doran* court summarized, "Allegations that a plaintiff has visited a
11 public accommodation on a prior occasion and is currently deterred from
12 visiting that accommodation by accessibility barriers establish that a
13 plaintiff's injury is actual or imminent."[35]

14       Similarly, in the very first case to establish deterrence-standing (a
15 case coincidentally handled by plaintiff's counsel), the Ninth Circuit held,
16 "We hold that a disabled individual who is currently deterred from
17 patronizing a public accommodation due to a defendant's failure to
18 comply with the ADA has suffered 'actual injury.' Similarly, a plaintiff
19 who is threatened with harm in the future because of existing or
20 imminently threatened non-compliance with the ADA suffers 'imminent
21 injury.'"[36]

22       And just last year, the Ninth Circuit weighed in again on the topic.
23 In *Civ. Rights Educ.*,[37] several disabled plaintiffs sued a hotel chain for
24 inaccessibility under the ADA. They did not have any concrete or specific
25 plans to return and the defendants argued that it was not enough to say that

26
27 [34] *Doran*, 524 F.3d 1034 (9th Cir. 2008).
   [35] *Doran*, supra, 524 F.3d at 1041.
28 [36] *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002).
   [37] *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093 (9th Cir. 2017)

Plaintiff's Reply Brief                    **Case No.** 2:18-CV-03859-SJO-JEM

"they do not plan to stay at the hotels unless and until [defendant] remedies the violation."[38] But the Ninth Circuit rejected the defense argument: "The Named Plaintiffs need not intend to visit the hotels until after remediation" because "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury [that] continues so long as equivalent access is denied."[39]

Here, Mr. Love states that he travels to Riverside often to eat and shop. Once the violations are removed, he intends to return to the Motel whenever he is in the area and the need arises.[40] Thus, there is no question that there is ongoing injury or a real likelihood of future injury under these circumstances.

In sum, Plaintiff has met each of the requirements under *Chapman* to establish standing.

## V.  CONCLUSION

For the foregoing reasons, the plaintiff respectfully requests this Court deny the defense motion.

Dated: May 24, 2019        CENTER FOR DISABILITY ACCESS


BY: */s/ Isabel Rose Masanque*
     ISABEL ROSE MASANQUE
     Attorney for Plaintiff

---

[38] *Civ. Rights Educ.*, 867 F.3d at 1100.
[39] *Civ. Rights Educ.*, 867 F.3d at 1100-1101.
[40] See DKT No. 23-2, Plaintiff's SUF, SUF #17-19.