UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LOVE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>TIRUPATI INVESTOR ENTERPRISES, INC., *et al.*,<br><br>　　　　　　Defendants. | Case No. ED CV 18-834-DMG (PLAx)<br><br>**ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [23]** |

This matter is before the Court on a Motion for Summary Judgment filed by Plaintiff Samuel Love against Defendant Tirupati Investor Enterprises, Inc. ("MSJ"). [Doc. # 23.] The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's MSJ.

## I.

## PROCEDURAL BACKGROUND

On April 21, 2018, Plaintiff Samuel Love filed a Complaint against Defendant Tirupati Investor Enterprises, Inc., alleging violations of the Americans with Disabilities Act ("ADA") and the Unruh Civil Rights Act. [Doc. # 1.] On May 11, 2018, Defendant

filed an Answer. [Doc. # 10.] On May 2, 2019, Plaintiff filed the instant MSJ.[1] [Doc. # 23.] The MSJ has since been fully briefed. [Doc. ## 30, 31.]

## II.
## FACTUAL BACKGROUND[2]

Plaintiff is a paraplegic who cannot walk and must use a wheelchair for mobility. *See* DSGD at ¶ 1 [Doc. # 29]. The Sands Motel is located at or about 10625 Magnolia Avenue in Riverside, California. *Id.* at ¶ 2. In March 2018 and to the present, Defendant owned and operated the Sands Motel. *See id.* at ¶¶ 3–4.

Plaintiff attests that on March 5, 2018, he traveled to the Sands Motel to check the lodging rates and stay there for the night. *See* Love Decl. at ¶ 3 [Doc. # 23-4]. He declares that as he drove into the parking lot of the Sands Motel, he discovered that the property had two spaces that were marked as reserved for persons with disabilities. *See id.* at ¶ 4. Plaintiff claims that the access aisle for these two spaces was narrow, and that neither of the spaces were marked as "van accessible."[3] *See id.* at ¶ 5. He further claims that the parking stalls and the access aisle for the parking spaces were not level and had noticeable slopes. *See id.* at ¶ 6. Plaintiff attests that because these conditions precluded him from safely parking and disembarking from his vehicle, Plaintiff was deterred from patronizing

---

[1] Plaintiff's counsel violated Local Rule 7-20 by failing to lodge a proposed order with the MSJ.

[2] Unless otherwise indicated, the facts recited in this section are uncontroverted. Furthermore, insofar as a party fails to adequately respond to an assertion of fact in a separate statement, the Court considers any such assertion to be uncontroverted for the purposes of the instant motion. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion [or] . . . . issue any other appropriate order"). For instance, although Defendant purportedly disputes Plaintiff's assertions that he is a paraplegic, is unable to walk, and uses a wheelchair for mobility, Defendant fails to cite any evidence to controvert those facts. *See* Def.'s Statement of Gen. Disputes ("DSGD") at ¶ 1 [Doc. # 29]. Accordingly, the Court considers that fact to be uncontroverted for the purposes of deciding the instant MSJ.

[3] Plaintiff does not argue that Defendant's failure to mark either of these spaces as "van accessible" constitutes an architectural barrier that gives rise to liability under the ADA and the Unruh Civil Rights Act. *See* Pl.'s Mem. of P. & A. at 10–12 (instead discussing the parking spaces' other purported ADA violations) [Doc. # 23-1].

the property. *See id.* at ¶¶ 7–10.  On the other hand, one of Defendant's principals states that the Sands Motel's business records do not show that Plaintiff ever registered at the Motel or had contacted the Motel for that purpose.[4]  *See* Tailor Decl. at ¶¶ 3–5 [Doc. # 28].

On April 18, 2018, Plaintiff's investigator, Evens Louis, visited the Sands Motel. *See* DSGD at ¶ 12 [Doc. # 29].  According to Louis, he observed that two parking spaces at the property were marked and reserved for use by persons with disabilities, and that each of them was 96 inches wide and had a shared access aisle that was 68 inches wide.  *See* Louis Decl. at ¶ 5 [Doc. # 23-5].  He attests that the parking spaces and the access aisle had slopes with a gradient ranging from 3.3% to 3.5%.  *See id.* at ¶ 6.  Louis observed that the transaction counter inside the Motel was 42 inches above the floor.  *See id.* at ¶ 7.

Conversely, Tailor maintains that as of May 15, 2019, he "believe[s] [that] there is enough space in the van accessible area for a wheelchair bound individual to exit and then access the Motel's rooms and the [front] desk area by way of the ramp."  *See* Tailor Decl. at ¶¶ 9–10 [Doc. # 28].  He further claims that as of May 15, 2019, the Sands Motel has a "special lowered transaction counter" that he "believe[s]" adequately accommodates "disabled and wheelchair bound individuals" by "enabl[ing] them to register at the [front] desk."  *See id.* at ¶¶ 14–15.  Additionally, based on Tailor's "experience in operating the Sands Motel since 2003," he "estimate[s]" that "it would cost approximately over $50,000.00 to change the van accessible disabled parking space and ramp in the manner

---

[4] Tailor also states:  "[A]s I understand it the Plaintiff in his declaration and in the Complaint has not described what time of the day or night he came onto the Motel [sic] or the type and description of the vehicle he was in for me to be able to verify with the Motel's employees working that day whether they recall or recongnized [sic] the vehicle description."  *See* Tailor Decl. at ¶ 23 [Doc. # 28].  To the extent Defendant thinks that this raises a relevant defense, Defense Counsel could have conducted discovery on these issues.  His inexplicable failure to do so is not a basis for denying the instant MSJ.

that Plaintiff is requesting." *See id.* at ¶ 12.  The Sands Motel is not generating sufficient revenue at this time to cover that cost.  *See id.* at ¶ 13.

## III.
## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Material facts are those that may affect the outcome of the case.  *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)).  "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  "Rather, it draws all inferences in the light most favorable to the nonmoving party."  *Id.*

## IV.
## DISCUSSION

To prevail on a Title III ADA discrimination claim, a plaintiff must show:  he or she is disabled within the meaning of the ADA; the defendant owns, leases, or operates a place of public accommodation; the existing facility at the defendant's place of business or property presents an architectural barrier; and the removal of the barrier is readily

achievable. *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007–08 (C.D. Cal. 2014). "The enforcement provisions of Title III provide only for injunctive relief. Damages are not available to individuals." *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1136 (9th Cir. 2002). Further, a violation of the ADA gives rise to a cause of action under the Unruh Civil Rights Act. *See* Cal. Civ. Code § 51(f).

No genuine dispute of material fact exists regarding whether Plaintiff is disabled within the meaning of the ADA, or whether, at all relevant times, Defendant owned and operated a place of public accommodation. *See* DSGD at ¶¶ 1–4 [Doc. # 29]; *see also* 42 U.S.C. § 12181(7)(A) ("The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce . . . an inn, hotel, motel, or other place of lodging . . . ."). The parties dispute whether: (1) the Complaint sufficiently alleges that Plaintiff has standing to seek injunctive relief under the ADA; (2) the Sands Motel had the architectural barriers in question on March 5, 2018; (3) Plaintiff's claims for injunctive relief are now moot; and (4) the removal of the alleged architectural barriers from the parking lot is "readily achievable" within the meaning of the ADA. *See* Opp'n at 2–3 [Doc. # 30];[5] Reply at 3–11 [Doc. # 31].

To establish standing to seek injunctive relief under the ADA, a plaintiff "must demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the [defendant's] actions, . . . that the injury can be redressed by a favorable decision[,] . . . . [and that there is] a 'real and immediate threat of repeated injury' in the future." *See Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (*en banc*) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)). An ADA plaintiff suffers an injury-in-fact if he or she "encounters an accessibility barrier" that "interfere[s] with the plaintiff's 'full and equal enjoyment' of the facility." *See id.* at 947 (quoting 42 U.S.C. § 12182(a)). Further, "an ADA plaintiff can show a likelihood of future

---

[5] All page references herein are to page numbers inserted by the CM/ECF system.

injury . . . . when discriminatory architectural barriers deter him from returning to a noncompliant accommodation." *See id.* at 949.

Defendant argues that the Complaint "pleads that [Plaintiff] simply encountered an ADA [barrier] but [does] not plead . . . causation[—]how the barrier caused his particularized injury-in-fact, how [the barrier] related to [Plaintiff's] disability and denied him 'full and equal access' to the motel." *See* Opp'n at 6 [Doc. # 30].  The Complaint alleges the following facts, which show that the Sands Motel did not have a van-accessible parking space when Plaintiff visited it in March 2018:  the two parking spaces reserved for persons with disabilities were 96 inches wide, they included an access aisle that was 68 inches wide, and they had slopes "greater than 2.1%."  *See* Compl. at ¶¶ 13–14, 16 [Doc. # 1].  The Complaint further avers that Plaintiff "uses a wheelchair for mobility[,]" and that individuals in wheelchairs require van-accessible parking spaces in order to allow them to transfer to and from their vehicles.  *See id.* at ¶¶ 1, 40–43.  Moreover, although the Complaint does not allege that Plaintiff personally encountered the transaction counter that was 42 inches above the ground, the pleading does indicate that the height of the counter hinders wheelchair-bound persons from using it.  *See id.* at ¶¶ 26–28.  The Complaint further contends that "Plaintiff plans to return and patronize the Motel but will be deterred from visiting until [Defendant] remove[s] the barriers."  *See id.* at ¶ 29.  Thus, the Complaint not only alleges facts showing that Defendant's failure to remove the parking lot's architectural barriers caused Plaintiff to suffer an injury-in-fact that could be remedied via injunctive relief, but it also avers sufficient facts to confer standing on Plaintiff to seek an injunction modifying the transaction counter. *See Chapman*, 631 F.3d at 950–51 ("We have held that '[a]n ADA plaintiff who has Article III standing as a result of at least one barrier at a place of public accommodation may, in one suit, permissibly challenge all barriers in that public accommodation that are related to his or her specific disability.'" (quoting *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008))).

Next, there is no genuine dispute of material fact that Plaintiff experienced architectural barriers in the parking lot when he visited the Sands Motel on March 5, 2018.

On that date, he observed that the two parking spaces designated for persons with disabilities were narrow and that their shared access aisle had noticeable slopes. *See* Love Decl. at ¶¶ 4–6 [Doc. # 23-4]. Louis attests that when he visited the Sands Motel just over a month later, he observed that the two parking spaces were 96 inches wide, they had a shared access aisle that was 68 inches wide, and the access aisle had slopes with a gradient ranging from 3.3% to 3.5%. *See* Louis Decl. at ¶¶ 5–6 [Doc. # 23-5]. These conditions violate the ADA Accessibility Guidelines ("ADAAG"), and therefore constitute architectural barriers for the purposes of the statute. *See* 2010 ADAAG at §§ 208.2.4 (at least one in every six accessible spaces must be a van parking space), 502.2 (van parking spaces shall be at least 132 inches wide), 502.3.1 (access aisles accompanying van parking spaces shall be at least 60 inches wide), 502.4 ("Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles."); 1991 ADAAG at §§ 4.1.2(5)(b) (one in every eight accessible parking spaces must be a van parking space, which shall have an access aisle that is at least 96 inches wide), 4.6.3 ("[P]arking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions."); *see also Chapman*, 631 F.3d at 947 ("Because the ADAAG establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA."). Louis also attests that the transaction counter was 42 inches above the ground on April 18, 2018, *see* Louis Decl. at ¶ 7 [Doc. # 23-5], which also constitutes an architectural barrier, *see* 2010 ADAAG at §§ 904.4, 904.4.1 (providing that at least one sales counter shall not be more than 36 inches above the ground); 1991 ADAAG at § 7.2(1) (same).

Defendant complains that Plaintiff improperly "attempts" to establish the existence of the parking lot's architectural barriers "after the fact by way of his expert's alleged visit to the motel on April 18, 2018." *See* Opp'n at 7 [Doc. # 30]. Nonetheless, the record contains no evidence suggesting that the aforementioned ADAAG violations in the parking lot somehow arose only after Plaintiff visited the property. Further, Tailor's assertion that

the Sands Motel has no record of Plaintiff registering at the Motel or contacting the Motel for that purpose is unsurprising, given that Plaintiff claims he left the premises after he realized that he could not safely park there. *See* Tailor Decl. at ¶¶ 4–5 [Doc. # 28]; Love Decl. at ¶ 9 [Doc. # 23-4]. Therefore, there is no genuine dispute of material fact that Plaintiff encountered the aforementioned access barriers in the parking lot, which affords him standing to seek injunctive relief to remedy the noncompliant transaction counter. *See Chapman*, 631 F.3d at 950–51.

Defendant further argues that "even if the alleged barriers once existed at the time of plaintiff's original visit, . . . they do not continue to exist for purposes of injunctive relief." *See* Opp'n at 7 [Doc. # 30]. "A request for prospective relief can be mooted by a defendant's voluntary discontinuance of challenged activities if the defendant meets the 'formidable burden' of demonstrating that it is '*absolutely clear* the alleged wrongful behavior could not reasonably be expected to recur.'" *Lozano v. C.A. Martinez Fam. Ltd. P'ship*, 129 F. Supp. 3d 967, 970 (S.D. Cal. 2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000)) (emphasis added). Tailor's declaration fails to satisfy this "formidable burden" because he does not attest that the width of the designated parking spaces, the width of the access aisle, the gradient of the access aisle, or the height of the transaction counter comport to the requirements of the ADAAG (*e.g.*, that there is a van parking space that is at least 132 inches wide). Rather, he simply "believe[s]" that, as of May 15, 2019, a wheelchair-bound person would be able to travel from the designated parking spaces to the front desk, and that he or she could

register for a room at the "special transaction counter." *See* Tailor Decl. at ¶¶ 9–11, 14–15 [Doc. # 28]. Therefore, Plaintiff's ADA claims are not moot.[6]

Lastly, Title III of the ADA provides the following definition for the term "readily achievable":

> [E]asily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable, factors to be considered include—
>
> (A) the nature and cost of the action needed under this chapter;
>
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
>
> (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
> (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9).

Here, Tailor attests that, given his "experience in operating the Motel since 2003," he estimates "it would cost approximately over $50,000.00 to change the van accessible disabled parking space and ramp in the manner that Plaintiff is requesting." *See* Tailor

---

[6] Similarly, the Court rejects Defendant's argument that Tailor's testimony gives rise to a triable issue of fact regarding whether the barriers in question ever existed on the property, given that Tailor does not rebut the measurements included in Louis' declaration. *See* Opp'n at 7–8 [Doc. # 30]; *Liberty Lobby*, 477 U.S. at 248 ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, *if the evidence is such that a reasonable jury could return a verdict for the nonmoving party*." (emphasis added)).

Decl. at ¶ 12 [Doc. # 28]. Tailor also asserts that the Motel does not generate sufficient revenue to cover such a hefty expenditure. *See id.* at ¶ 13. While Plaintiff counters that Tailor is "not an expert [on the] ADA or construction," such deficiencies concern only the weight of Tailor's testimony, which is a matter committed solely to the trier of fact. *See Soremekun*, 509 F.3d at 984. Furthermore, the Court rejects Plaintiff's argument that because Defendant apparently attempted to bring the designated accessible parking spaces into compliance with the ADA, there is no genuine dispute that the removal of such barriers is readily achievable. *See* Reply at 4 [Doc. # 31]; *Soremekun*, 509 F.3d at 984 ("[The court] draws all inferences in the light most favorable to the nonmoving party."). Thus, Defendant has shown that whether the removal of the barriers in the parking lot is "readily achievable" presents a triable issue of fact.

Conversely, the removal of the ADAAG violations arising from the transaction counter is readily achievable because the Department of Justice's regulations contemplate remedial measures to accomplish that task and Defendant offers no evidence that those measures are unduly burdensome. *Cf.* 28 C.F.R. § 36.304(b)(3)–(4) ("Examples of steps to remove barriers include, but are not limited to, the following actions . . . [r]epositioning shelves [and] [r]earranging tables, chairs, vending machines, display racks, and other furniture"). Thus, there is no genuine dispute of material fact that the height of the transaction counter amounts to an actionable ADA violation. *See Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847–48 (N.D. Cal. 2011) ("[T]he '[p]laintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable' and . . . if plaintiff meets that burden, the burden shifts to the defendant, who 'bears the ultimate burden of persuasion regarding its affirmative defense that a suggested method of barrier removal is not readily achievable.'" (quoting *Colo. Cross Disability Coal. v. Hermanson Family Ltd. P'ship*, 264 F.3d 999, 1006 (10th Cir. 2001))).

//
//
//

## IV.
## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's MSJ insofar as he seeks summary judgment on his ADA and Unruh Civil Rights Act claims arising from the transaction counter.  Upon the entry of final judgment, the Court shall award Plaintiff (*inter alia*) a $4,000 damages award for the non-compliant transaction counter under the Unruh Civil Rights Act and an injunction requiring Defendant to cure the ADAAG violations relating to the transaction counter.  Pursuant to Federal Rule of Civil Procedure 56(g), the Court also **GRANTS** summary adjudication as to the following issues:  (1) Plaintiff is disabled within the meaning of the ADA; (2) at all relevant times, Defendant owned and operated the Sands Motel, which is a place of public accommodation; and (3) the two parking spaces designated for persons with disabilities at the Sands Motel are architectural barriers because they do not comply with the ADAAG.  The Court **DENIES** the remainder of the motion.  The only issue remaining for trial on August 27, 2019 is whether the removal of the aforementioned architectural barriers in the parking lot is "readily achievable."

The Court orders the parties to show cause why they should not be sanctioned for their failure to comply with the Court's order to participate in early mediation by September 7, 2018 and to file a Joint Report re Results of Early Mediation by September 14, 2018.  *See* Scheduling and Case Management Order for Jury Trial and Order/Referral to ADR [Doc. ## 16–17].  By 10 days after the date of this Order, the parties shall file a Joint Response.

The Court **VACATES** the June 7, 2019 hearing.

**IT IS SO ORDERED.**

DATE: June 6, 2019

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE